IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:15-CV-81002 (Marra/Matthewman)

KEVIN BUJA,

    Plaintiff,

v.

NOVATION CAPITAL, LLC, *et al.*,

    Defendant.

**<u>DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF ROBERT BIGGERSTAFF</u>**

-i-

# TABLE OF CONTENTS

                                                            **Page**

I. Introduction ............................................................................................................... 1
II. Factual background .................................................................................................. 3
      A. Buja's Second Amended Complaint ............................................................ 3
      B. Biggerstaff Report and Rebuttal Report ...................................................... 3
II. Legal standard ........................................................................................................... 4
III. Argument .................................................................................................................. 6
      A. Biggerstaff's methods are fundamentally unreliable .................................... 6
            1. Biggerstaff did not rely on any supportable reasoning or methodology ........... 7
            2. Even if his methodology were sound, Biggerstaff did not properly apply the facts ........................................................................................... 9
      B. Biggerstaff is not helpful to trier of fact .................................................... 11
IV. Conclusion .............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999) ........................................................................................4, 6

*Club Car, Inc. v. Club Car (Quebec) Import, Inc.*,
    362 F.3d 775 (11th Cir. 2004) ...............................................................................................5

*Conrad v. General Motors Acceptance Corp.*,
    283 F.R.D. 326 (N.D. Texas 2012) .......................................................................................2

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
    662 F.3d 913 (7th Cir. 2011) .................................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................4, 5, 6

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2014) ...........................................................................................2

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ..............................................................................................................5

*Hunt v. 21st Mortgage Corp.*,
    Case No. 12-cv-2697 (N.D. Ala.) .........................................................................................2

*Jones v. Otis Elevator Co.*,
    861 F.2d 655 (11th Cir. 1988) ..........................................................................................6, 7

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ..........................................................................................................4, 6

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005) .............................................................................................5

*McCorvey v. Baxter Healthcare Corp.*,
    298 F.3d 1253 (11th Cir. 2002) ....................................................................................4, 5, 6

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
    326 F.3d 1333 (11th Cir. 2003) .............................................................................................5

*Richard B. Feldman, DPM., LLC v. Nat'l Waste Mgmt.*,
    Case No. 3:10-cv-00242 (D. Conn. 2010) ............................................................................1

# TABLE OF AUTHORITIES
(continued)

Page

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ................................................................................... 4, 11

*Shamblin v. Obama for Am.*,
   2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr. 27, 2015) ................................................ 2

*Sher v. Raytheon Co.*,
   419 F. App'x 887 (11th Cir. 2011) .................................................................................. 5

*Warnick v. DISH Network*,
   Case No. 12-cv-1952 (D. Colo.) ...................................................................................... 2

*Warnick v. Dish Network, LLC*,
   301 F.R.D. 551 (D. Colo. June 27, 2014) ........................................................................ 2

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ............................................................ 1

**Rules**

Federal Rule of Civil Procedure 26 ........................................................................................... 3

Federal Rule of Civil Procedure 30(b)(6) ................................................................................. 9

Federal Rule of Evidence 702 ......................................................................................... 1, 4, 6

**Other Authorities**

47 C.F.R. § 64.1200(d) ............................................................................................................. 8

Pursuant to Federal Rule of Evidence 702, defendants NC Legacy, LLC (f/k/a Novation Capital, LLC) ("NC Legacy"), Novation Funding, LLC ("Funding"), and Novation Ventures, LLC ("Ventures") (collectively, "Defendants") move to exclude the testimony of Robert Biggerstaff in both the Expert Report of Robert Biggerstaff (Docket Entry 143-13 (filed under seal), the "Biggerstaff Report") and the Rebuttal Expert Report of Robert Biggerstaff (Docket Entry 145-5 (filed under seal), the "Rebuttal Report") served by plaintiff Kevin Buja. Biggerstaff's testimony should be excluded pursuant to Rule 702 and deemed inadmissible because the methodology he relies on is not sufficiently reliable and he does not employ any scientific, technical, or specialized expertise that will help the trier of fact determine a fact in issue. Accordingly, Defendants request that the Court enter an Order excluding the testimony of Biggerstaff.

## MEMORANDUM OF LAW

**I.    Introduction**

Biggerstaff has parlayed a long-ago-concluded career in computer support and operations into a lucrative "expert" consultancy on matters related to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Biggerstaff has been an "expert" witness in hundreds of cases — the vast majority of which were fax cases on behalf of the same law firm (Anderson + Wanca) and with respect to one database that Anderson + Wanca obtained on the condition of confidentiality and then used to file numerous other lawsuits using the same data.[1]

---

[1] Biggerstaff facilitated this process, receiving the data from Anderson + Wanca on February 24, 2009 (s*ee* Defendant's Opposition to Class Certification, *Richard B. Feldman, DPM., LLC v. Nat'l Waste Mgmt.*, Case No. 3:10-cv-00242 (D. Conn. 2010)). Biggerstaff then created a spreadsheet with names and addresses on it and gave it to Anderson + Wanca. *Id.* Notably, the Anderson + Wanca firm has been heavily criticized by many courts related to that database, including the Seventh Circuit, which found that "class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class. . . .

-1-

The work for Anderson + Wanca related to TCPA fax cases. Biggerstaff has been an "expert" only in a handful of TCPA cases based on telephone calls — and in several of those cases, class certification was ultimately denied. *See e.g., Conrad v. General Motors Acceptance Corp.,* 283 F.R.D. 326, 327 (N.D. Texas 2012); *Warnick v. Dish Network, LLC,* 301 F.R.D. 551, 553 (D. Colo. June 27, 2014); *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 401-02 (D. Colo. 2014); *Shamblin v. Obama for Am.,* 2015 U.S. Dist. LEXIS 54849, *2-*3 (M.D. Fla. Apr. 27, 2015). Additionally, multiple courts have criticized and/or declined to follow Biggerstaff's testimony. *See, e.g., Shamblin*, 2015 U.S. Dist. LEXIS 54849 at n. 2 ("[T]he Court disagrees with any of [Biggerstaff's] conclusions tending to suggest that classwide proof is available on these specific issues."); *Warnick v. DISH Network,* Case No. 12-cv-1952 (D. Colo.) (Docket Entry 238) ("Mr. Biggerstaff admitted his methodology would produce many false positives."); *Hunt v. 21st Mortgage Corp.*, Case No. 12-cv-2697 (N.D. Ala.) (Docket Entry 57) ("The court will, however, note without decision that it is unimpressed by the portions of plaintiff's argument that gushingly endorse Biggerstaff as 'a leading expert in TCPA cases,' 'the administrator of [a] TCPA website,' 'a frequent commenter on TCPA rules,' having 'qualifications as a TCPA expert [that] cannot reasonably be questioned,' and having 'author[ed] and co-authored articles regarding the TCPA in law reviews and legal journals.'") (internal citations omitted).

Buja has now presented Biggerstaff as an "expert" in this case to opine on whether a class can be certified related to Buja's claims under the do-not-call ("DNC") provisions of the TCPA. For the reasons set forth below, Biggerstaff's methodology is unreliable and his testimony will not prove useful to the finder of fact. Accordingly, his testimony should be excluded.

---

There is no basis for confidence that they would prosecute the case in the interest of the class, of which they are fiduciaries . . . rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011).

## II. Factual background

### A. Buja's Second Amended Complaint

In his Second Amended Complaint (Docket Entry 102, the "SAC"), Buja maintains that Defendants used an Automatic Telephone Dialing System ("ATDS") to make unsolicited calls to him in violation of the TCPA and that Defendants continued to call him after he requested not to be called, in violation of the DNC provisions of the TCPA. (*See generally* SAC). Buja also purports to represent three putative classes of similarly situated individuals. (SAC, ¶ 43). But in his motion for class certification, Buja made no reference to his ATDS claim and sought to certify only the following class:

> (i) All persons within the United States (ii) to whom Defendants, directly or through their agents, (iii) made more than one call to their telephone (iv) within a twelve-month period (v) between July 21, 2011 through the date of class certification, (vi) where Defendants' records show the person previously stated that he or she did not wish to received telephone calls from or on behalf of Defendants.

[DE 145].

### B. Biggerstaff Report and Rebuttal Report

Pursuant to Federal Rule of Civil Procedure 26, Buja served the Biggerstaff Report on December 4, 2017. (*See* Exh. A).

On January 31, 2018, Defendants served the Declaration of Report of Jan Kostyun, (*see* Docket Entry 143-12 (filed under seal), the "Kostyun Report"), to respond to the Biggerstaff

-3-

Report and opine on the adequacy of Ventures' DNC policies. On February 16, 2018, Buja served the Rebuttal Report as an exhibit to his motion for class certification. (*See* Exh. B).

**II.     Legal standard**

Under Rule 702, the subject of an expert's testimony must involve "scientific, technical, or other specialized knowledge." Therefore, "subjective belief or unsupported speculation" will not suffice. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589-90 (1993). The party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999). As the Supreme Court recognized in *Daubert*, Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony. 509 U.S. at 589; *see also McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). This responsibility is identical when the court is presented with a proffer of expert technical evidence. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). In either case, the court engages in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Specifically, the court must consider whether:

>   (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
>   (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and
>
>   (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998)).

Importantly, although there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion, and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate.  Thus, for example, while an expert's qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability, and case law dictates that one may be considered an expert but still offer unreliable testimony.  *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *McCorvey,* 298 F.3d at 1256 ("*Daubert* requires that trial courts act as 'gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury."); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1342 (11th Cir. 2003).

The Eleventh Circuit has noted that "the primary purpose of any *Daubert* inquiry is for the district court to determine if the expert, 'whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1255 (11th Cir. 2005).  Testimony must be excluded "if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts."  *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775,780 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 592).

The *Daubert* standard applies to expert opinions offered at the class certification stage. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 2011) (district court's failure "to

conduct a *Daubert*-like critique of the proffered experts' qualifications" at class certification stage "was error").

## III. Argument

### A. Biggerstaff's methods are fundamentally unreliable.

Under the *Daubert* standard, the Court's role is to "keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison*, 184 F.3d at 1311-12. In ascertaining the reliability of a particular scientific expert opinion, courts consider, to the extent possible: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *McCorvey*, 298 F.3d at 1256 (citing *Daubert*, 509 U.S. at 593–94). Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis. *See Kumho Tire*, 526 U.S. at 150. Moreover, testimony from an expert is admissible "only if the expert knows facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Jones v. Otis Elevator Co.,* 861 F.2d 655, 662-63 (11th Cir. 1988).

Here, Biggerstaff's opinions are unreliable because he did not rely on any scientifically accepted reasoning or methodology in the telecommunications industry to reach his conclusion, and even if his methodology were sound, he did not properly apply the facts.

**1. Biggerstaff did not rely on any supportable reasoning or methodology.**

The methodology used by Biggerstaff to allegedly identify calls made by Ventures after a DNC/STOP request does not pass muster because it is based not on scientific reasoning or methodology, but rather assumptions and speculation. Regardless of whatever skills Biggerstaff may have in data analytics and software engineering, his findings are meaningless here because they rely on mere conjecture.



-7-

This approach, however, is fundamentally flawed. First, with respect to the terms used to identify "calls" in Ventures' Salesforce database and the terms used to identify "stop requests," Biggerstaff acknowledged in his deposition that his usage of these identifiers was purely speculative. (Kostyun Report, ¶ 65). A close examination of these terms reveals that there are numerous false positives arising from this analysis. (*Id.* at ¶¶ 42-49). This speculative analysis is not a proper scientific methodology.

▮▮▮▮▮ In fact, the relevant regulations state that "[p]ersons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. ***This period may not exceed thirty days from the date of such request***." 47 C.F.R. § 64.1200(d) (emphasis added). ▮▮▮▮▮ Biggerstaff includes Buja among the individuals who received a Qualifying Call, even though the first of the two calls made to Buja was actually made just *13* days after the alleged DNC request. (*Id.* at ¶ 78).

The fact that Biggerstaff's analysis was based purely on speculation and conjecture undermines his methodology, as well as his conclusions related to how many Qualifying Calls were made and what percentage of DNC/STOP requests were properly recorded. (Biggerstaff Report, ¶¶ 23, 28). ▮▮▮▮▮ In fact, Mr. Biggerstaff admitted in his

deposition that he could not "put a percentage on" his belief that there were not adequate procedures in place. (Kostyun Report, ¶ 110). This falls woefully short of the standards for expert evidence and the Court should exclude Biggerstaff's testimony.

### 2. Even if his methodology were sound, Biggerstaff did not properly apply the facts.

Even if Biggerstaff had used a scientifically valid methodology to reach his conclusions (which he did not), he did not properly apply the facts of the case. At the most basic level, there are critical documents, data, and testimony that Biggerstaff simply did not review. Despite opining on the sufficiency of Ventures' DNC policies and procedures, Biggerstaff stated in his deposition that "I wasn't asked to render an opinion on the legal sufficiency or meeting the legal standard in the CFR and I have not requested any of the documents to that extent or for that point." (Kostyun Report, ¶ 113, quoting Deposition of Robert Biggerstaff). Biggerstaff also has not reviewed any of Ventures' policies, training materials, or call scripts, nor has he reviewed the Rule 30(b)(6) depositions in this case or sought any additional information from Ventures. (*Id.*, at ¶ 114). And despite admitting in his deposition that "[t]he recording is most likely the best evidence of what was said in the call," *id.*, at ¶ 82, Biggerstaff did not listen to a single call recording in connection with his analysis, other than the recordings of calls with Buja. *Id.*, at ¶ 83. In short, Biggerstaff lacks the necessary factual background to provide any meaningful expertise in this case.

As for the facts that Biggerstaff did review, his analysis failed to apply them properly or put his findings in context. Biggerstaff's analysis failed to account for at least the following factual realities:

- In the telecommunications industry, "call records" are typically automatically generated logs of all calls. The documents that Biggerstaff reviewed are not that

-9-

type of "call records," but rather represent "the following data points for all calling records in [Novation Ventures'] Salesforce database dating back to July 21, 2011 (four years before filing of suit): activity date, subject, assigned, the last four digits of the telephone number dialed, status, call type, comments, description, and account ID." (*See* Court's Order of July 13, 2017, Docket Entry 122, at p. 2). Because these are Salesforce database records (as opposed to automated call records), the information in the records was entered by hand by Novation Ventures' representatives. (Kostyun Report, ¶ 33). This undermines the accuracy of the data, but it is never discussed by Biggerstaff.

- The document referred to by Mr. Biggerstaff as a "DNC list" is actually a "do-not-market list." (*Id.*, at ¶ 50). The difference is that the do-not-market list contains both DNC requests from potential sellers ***and*** decisions by management not to call certain individuals. Biggerstaff's failure to adequately address this issue means his findings are suspect.

- There are individuals who at one time requested not to receive further communications, but have since initiated contact with Ventures and consented to be called. (*Id.*, at ¶ 97). Biggerstaff's analysis does not address this possibility, nor could it. The only way to determine whether a seller initiated contact with Ventures after making a DNC request would be to manually interpret Salesforce records, or listen to that individual seller's call recordings.

- The Salesforce database records contain all available numbers, or possible numbers, for the individual at issue. For example, the Salesforce entry for Buja

has six telephone numbers. (*Id.*, at ¶ 86). Biggerstaff's analysis does not address this issue.

Ultimately, fundamental differences between the nature of the Salesforce database and an automated call log make Biggerstaff's attempts to perform an empirical analysis to determine call violations fruitless. But Biggerstaff does not put any of the facts in context, instead glossing over these issues. To do the analysis that Biggerstaff proposes, an expert would need to explore a number of data fields in the Salesforce records that would require human review and interpretation. (*Id.*, at ¶ 42). In some cases, it might also be necessary to review and interpret data across multiple Salesforce records to determine if a DNC request or violation had occurred. (*Id.*) And in other cases, the only reliable method to determine DNC requests or call violations would be to analyze the contents of the actual call recordings, and possibly combine that information with the interpreted data from related Salesforce records. (*Id.*). Biggerstaff did not do any of those things. Accordingly, the Court should exclude his testimony.

      **B.**      **Biggerstaff is not helpful to trier of fact.**

In addition to the various analytical problems set forth above, Biggerstaff's testimony should be excluded because it will not "assist[ ] the trier of fact . . . to understand the evidence or to determine a fact in issue." *Rink,* 400 F.3d at 1291-92. In fact, the Biggerstaff Report and the Rebuttal Report are inconsistent, leaving unclear what opinion Biggerstaff is actually adopting and presenting more questions than answers. Most notably, Biggerstaff has now presented two completely different numbers for how many DNC/STOP requests were made based on his analysis of the comment fields in the Salesforce records. ███████████

███████████████████████████████████████████ ███████

███████████████████████████████████████

██████████████████████████████ Thus, far from helping the trier of fact determine a fact in issue, Biggerstaff has presented multiple alternatives for a single factual issue.

████████████████████████████████████████████████████████████████████████████

██████████████████████████████ That is not at all helpful to the Court. Discovery is closed, and the record is set — if Biggerstaff has a scientifically valid opinion, he needs to present it based on the information that is currently available. ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ This provides perhaps the clearest window possible into the work that Biggerstaff does: He is a mercenary for TCPA plaintiffs' lawyers, and he will happily run whatever numbers are necessary to support an argument for class certification in a TCPA case, regardless of what the facts are. That is not helpful to the trier of fact, and Biggerstaff's testimony should be excluded.

**IV.     Conclusion**

For the foregoing reasons, the Court should exclude the testimony of purported "expert" Robert Biggerstaff.

-13-

## **CERTIFICATION PURSUANT TO S.D. FLA. L.R. 7.1(a)(3)**

Defendants' counsel, Bryan Clark, hereby certifies that he has conferred with Plaintiff's counsel Keith Keogh, and he indicated that Plaintiff opposes the relief sought in this motion.

Dated: March 23, 2018                    THOMAS & LOCICERO PL

/s/ *Dana J. McElroy*
Dana J. McElroy
Florida Bar No.0845906
915 Middle River Drive, Suite 309
Ft. Lauderdale, FL 33304
Telephone: (954) 703-3416
Facsimile: (954) 400-5415
Email: dmcelroy@tlolawfirm.com

VEDDER PRICE, P.C.
Blaine C. Kimrey (*Pro Hac Vice*)
Bryan K. Clark (*Pro Hac Vice*)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
Email: bkimrey@vedderprice.com
Email: bclark@vedderprice.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **23rd** day of **March 2018**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

          By: /s/ *Dana J. McElroy*
              Attorney

## SERVICE LIST
(*Kevin Buja v. Novation Capital, LLC., et al.*)

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

KEITH J. KEOGH, ESQ.
*Attorney for Plaintiff*
Keogh Law, LTD
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel: 312-726-1092
keith@keoghlaw.com